```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA
                                                    Ind. No. 05 CR 33 (D.G.T.)



                    - v -




DAMON LUCKY,
                    Defendant

---------------------------------------------------------------x
```

OBJECTIONS
TO THE PRESENTENCE REPORT

**HARRY C. BATCHELDER, JR.**
Counsel for Damon Lucky
Sixty-First Floor
40 Wall Street
New York, New York 10005-1338
212-530-4480

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA

                                                 Ind. No. 05 CR 33 (D.G.T.)

           - v -

DAMON LUCKY,
               Defendant

------------------------------------------------------------x

### POINT I

THE IMPOSITION OF A TWO-POINT ENHANCEMENT FOR LUCKY'S POSSESSION OF A 'STOLEN' WEAPON WHEN NO PROOF OF THIS FACT WAS ADDUCED AT TRIAL VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION

      It is understood that prior to the trial and during the trial of Mr. Lucky Government counsel had in their possession a report which indicated that the weapon seized from Mr. Lucky at the time of his arrest was stolen. Government counsel did not seek to introduce this information but now seeks to enhance Lucky's sentence relying upon U.S.S.G. 2k.2.1 (b)(4)(A) which enhances Mr. Lucky's sentence by an additional two points. There is no proof whatsoever that Lucky was aware that the weapon was stolen so it must be assumed that the Government is relying on pre-<u>Booker</u> case law which hold that pursuant to a strict liability theory, which applied even if the defendant did not steal the gun personally, or knew that it was stolen or intended to permanently

2

deprive the owner of possession, the enhancement applied.  See, United States v. Williams, 49 F 3d 92 (2d Cir. 1995); United States v. Williams, 365 F. 3d 399 (5th Cir. 2004); United States v. Jackson, 401 F. 3d 747 (6th Cir. 2005); United States v. Griffiths, 41 F. 3d 844-845-46 (2d Cir. 1994); and United States v. Goodell, 990 F. 2d 497, 499 (9th Cir. 1993).  None of these cases address the recent revolution in sentencing beginning with Apprendi v. New Jersey, 530 U.S. 446 (2000)  and continued forward by Blakely v. Washington, 542 U.S. 296 (2004) and Booker v. United States, 534 U.S. 220 (2005).[1]

Analysis of this enhancement has involved little discussion and what little analysis there is can be condensed into a few arguments.  For example, the Court in Goodell, supra, at 499 stated as follows:

> "Section 2K2.1(b)(4) provides, however, that if the firearm is stolen, the offense level should be increased by two levels.  As the application notes specify, this enhancement applies 'whether or not the defendant knew or had reason to believe that the firearm was stolen.' U.S.S.G. 2K2.1, comment…We observe, moreover, the well-settled principle that '[a] statute may provide criminal liability without men rea consistent with due process if it is a regulatory measure in the interest of public safety.' Goodell, supra at 499. [Emphasis supplied]

Adding a more evangelical tone is the Sixth Circuit's pronouncement as follows:

> "We join with those courts in concluding that…, 'the upward adjustment for possession of a stolen firearm does not stand alone as an independent crime but is part of a sentencing court's quest to

---

[1] It should not escape this Court's notice that  by Department of Justice Diktat subsequent to the Blakely decision,  A  Field Marshal in the United States Department of Justice ordered all United States Attorneys including those subsequently fired for incompetence, as follows:
C. For pre-trial/plea cases, take the following protective measures pending a Supreme Court decision on the fate of the Guidelines:  1. Indictments:  Allege in indictments all Guidelines enhancement factors that are readily provable beyond a reasonable doubt (except prior convictions).  Supersede current indictments if necessary. [emphasis supplied] and this worthy also opined as follows:
Blakely would preclude the sentencing court from imposing upward adjustment or upward departure based upon facts that are not reflected in the jury verdict para see,  3/4 Procedures for applying Blakely to the Federal Sentencing Guidelines p. 7.
United States Department of Justice "Memorandum to all Federal Prosecutors: subject: Guidance regarding the application of Blakely v. Washington, to pending cases,  "2004 WL 1402697 (June 24, 2004).
http://www.sentencing.typepad.com/sentencing_law_and_policy/files/chris_wary_doj_memo.pdf"

3

>formulate a proper sentence…' " Singleton, supra at 26. Cited in
>United States v. Murphy, 96 F. 3d 846, 848-49 (6th Cir. 1996).

This strict liability, no knowledge enhancement, is akin to a magical journey to ascertain how and on what basis the Solons in Congress or the United States Sentencing Commission found, in their infinite wisdom, how to alter the "cloak of innocence" into a finely tailored "jumpsuit of guilt". Despite the Sixth Circuit's certainty, "right-thinking" people will find this "quest" most confusing. The path is ever changing, as the legal landscape continues to transform and dissolve at times, with few Congressional or Sentencing Commission sages to light the road to legal enlightenment. This borders on choosing your own adventure. Our gilded carriage on this journey will be the Third Circuit's decision in United States v. Mobley, 956 F. 2d 450, (3d Cir. 1992).

In Mobley the defendant was similarly convicted for violating 922(q) and the sentencing judge applied a two level enhancement based upon a finding that the firearm was "stolen". On appeal, counsel for Mobley argued that U.S.S.G. § 2K2.1(b)(2) violated the Due Process Clause of the Fifth Amendment and that the "enhancement creates a new statute that punishes a defendant for conduct of which he has not been found guilty." Mobley, 956 F. 2d at 454. The Third Circuit ruled against Mobley, opining that Mobley's counsel confused "the distinction among a sentence, a sentence enhancement, and the definition of a crime." Id. at 455. And '[i]f he was correct, any time specific offense characteristics of a sentence enhancement satisfy some element of a separate offense, many applications of the Guidelines would be constitutionally in doubt." Id. at 457.[2] [emphasis supplied]

---

[2] The Third Circuit again enters the miasma of "sentencing enhancement and element of the crime legal sophistry" and comes out—wrong again. See, United States v. Rouse, 226 Fed. Appx 97 (3rd Cir. 2007).

4

But before we play the legal version of three card monty, let us consider that there may be a less perilous road ahead, if we first take a step back.

As Mobley's counsel pointed out, the possession of a stolen firearm is in fact a crime. 18 U.S.C. 922(i) states as much, in no uncertain terms—and it contains a <u>mens rea</u> element. But watch as the legal street magicians (Congress and Breyer's "Rosemary's Baby" guidelines), engineer this crime's disappearance.

Since U.S.S.G. § 2K2.1(b)(2) does not requires <u>mens rea</u>— Presto change-o! We now have a 'sentencing enhancement.' Clearly, despite authority to the contrary, this sophistry runs afoul of <u>Booker</u> which opined, "Let us remember that"[m]erely using the label 'sentence enhancement' to describe the latter did not provide a principled basis for treating… two crimes differently." <u>United States</u> v. <u>Booker</u>, 543 U.S. 220, 231 (2005), citing <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466. "[T]he characterization of a fact or circumstance as an 'element' or a 'sentencing factor' is not determinative of the question 'who decides,' judge or jury," Id.

Though the prescribed statutory maximum may not be affected by the stolen firearm enhancement, this is a mere distraction: a sleight-of-hand trick that can easily lead one astray. The case before us boils down to how we treat the fact that the firearm possessed by the defendant was in fact stolen and there was absolutely no proof elicited at trial that the weapon was stolen.

"The Framers of the Constitution understood the threat of 'judicial despotism' that could arise from 'arbitrary punishments upon arbitrary convictions' without the benefit of a jury in criminal cases." <u>Booker</u> at 239. "Traditionally, the law has

5

distinguished between facts that are elements of crimes and facts that are relevant only to sentencing." Id. at 328, (Breyer, J. dissenting.)

Given this view, it is now necessary to consult and ascertain how the Mobley court viewed McMillan v. Pennsylvania, 477 U.S. 79 (1986): The Court stated, "The enhancement factor must not (1) alter the maximum penalty available for the crime committed, or (2) negate the presumption of innocence or relieve the prosecution's burden of proving guilt, or (3) create a separate offense calling for a separate penalty." McMillan 477 U.S. at 87.

The first and second parts of this test are easily addressed and dispensed with. No, the 'enhancement' does not alter the maximum penalty. This of course does not address the actual question at hand, which is why the government should not be relieved of its burden in proving to a jury that the gun was stolen. The second step is a self-fulfilling prophecy; if one applies the Fact of the Stolen Firearm as a strict liability 'enhancement' instead of requiring it to be alleged in the charging documents, it is hard to see how the burden of proof is not shifted for the 922(g) charge.

So, we are left only with choice number 3 to deal with. Would a separate offense be created in this instance? The Mobley court answered the question in the negative, holding that because the statute did "not alter the statutory maximum sentence" it functioned "solely to limit the sentencing court's discretion in selecting a penalty within the available range." Id. at 456. "[O}nly if the prosecution charged Mobley with violating § 911(i) or § 922(j) must it prove that he knew the gun was stolen." *You have been eaten by an alligator, please return to the Fundamental Principles section.*

6

Thus, if the Government fails to charge a defendant with a specific crime, and even removes <u>scienter</u>, we have a 'sentencing enhancement'! How could it be a separate crime, one might say; there's not even a <u>scienter</u> requirement!

Rather, what is being encouraged here is for the government, if it has shaky evidence incapable of proving the defendant knew a seized firearm was stolen, to simply omit that fact until sentencing, at which point, it ceases to become a separate crime. The trial has alchemically transformed "stolen weapon" into a 'sentence enhancement.'

Justice Stevens noted in his dissent in <u>Booker</u> that the government always takes steps in most cases to charge defendants in a way that would subject them to the greatest punishment.[3]

"In many cases, prosecutors could avoid…a[n] problem simply by alleging in the indictment the facts necessary to reach the chose Guidelines sentence…Enhancing the specificity of indictments would be a simple matter…The Government has already directed its prosecutors to allege facts such as the possession of a dangerous weapon…"<u>Booker</u>, 534 U.S. at 277-78, (STEVENS, J., dissenting in part).

This, of course, was not done here. All we are left with is the notion that strict liability, in instances such as this, is permissible because a "statute may provide criminal liability without <u>mens rea</u> consistent with due process if it is a regulatory measure in the interest of public safety." <u>Goodell</u>, 990 F.2d at 499.

Most laws are, of course, regulatory measures, and this may mean they do not offend due process. This is not instructive, however, as to whether such a law fails basic notions of fairness of any of the more specific provisions of the Constitution, such as the one guaranteeing the right to a trial by jury.

---

[3] This is mandated by the blood thirsty "Comey Memorandum" which is "an odious remnant of the "Ashcroft Gang" but still sadly controls all the charging decisions of all United States Attorneys. Found at http://sentencing.typepad.com/sentencing_law_and_policy/files/dag_jan_28_comey_memo_on_booker.pdf

7

Further, the deterrent effect of such a law is highly suspect. The case of United States v. Cordoba-Hincapie, 825 F. Supp. 485, 1993 (E.D.N.Y. 1993), authored by Judge Weinstein is instructive on this point.

x x x

Such policies "fail to give adequate weight to the subtlety of the principle's operation. They generally proceed on the theory that once an individual is determined to be any sort of criminal, he or she should be punished for everything done. Such an approach misses the fundamental Anglo-American legal understanding that two individuals can commit the same act under very different circumstances. It attributes to policymakers—whether they be members of Congress or of the Sentencing Commission—a purely retributive desire to see the fullest sanctions of the criminal law imposed without regard to individual blameworthiness. The federal courts appear to be gradually substituting a new theory of criminal liability based upon 'wrongful conduct' that is unprecedented and runs against the great weight of legal authority and traditional practice." Id. at 526-27. This is precisely the situation at hand and it is constitutionally infirm.

POINT II

DAMON LUCKY'S CRIMINAL HISTORY SHOULD BE REDUCED BY THREE POINTS.

Paragraphs 18, 19, and 20 of the P.S.I. report state in part as follows:

| 18. Date of Arrest | Offense/Court | Disposition | Guidelines/Points |
|---|---|---|---|
| 05-02-92 (Age 19) | Assault with Intent to Cause Physical Injury with a Weapon/ Supreme Court Brooklyn, NY | 01-11-93 6 years custody 02-01-93 Committed | 4A1.1(a) 4A1.2(e)(1) <u>3</u> |

x x x

19. Police and court records reflect that on April 23, 1992, the defendant accosted another individual in front of 583 Park Avenue in Brooklyn. The defendant fired several rounds, one of which went through the kitchen window of a nearby apartment building, and struck the victim in the back. Police apprehended the defendant on May 2, 1992, but the firearm was never recovered. According to the local presentence report, the victim spent two days in the hospital as a result of his injuries.

8

20. As verified by the Certificate of Disposition, the defendant was sentenced on January 11, 1993, to a six-year term of custody in Kings County Supreme Court, concurrent with the sentence imposed for the offense described in ¶ 24.

x x x

Paragraph 22, 23 and 24 of the P.S.I. state as follows:

22. The defendant was paroled on July 24, 1997, and assigned to a special offender until of the New York State Department of Parole. His parole term expired on November 24, 1998. Parole records have been requested, but a response has not yet been received.

23. 09-18-92          Criminal Possession          01-11-93          4A1.1(a)
    (Age 19)          of a Controlled             3 years custody    4A1.2(e)(1)
                      Substance-5th/
                      Supreme Court                                  3
                      Brooklyn, NY

24. Police and court records reflect that on September 18, 1992, two handguns and approximately five hundred milligrams of crack cocaine were recovered from the defendant's home pursuant to a search warrant. In post-arrest statement, the defendant admitted that he intended to sell the narcotics and that the firearms belonged to his friends. Per the Certificate of Disposition, this sentence ran concurrently with the prison term imposed for the offense described in ¶ 18.

Prior to the recent Amendment 709 to U.S.S.G. 4A1.2, there was some confusion as to when a prior conviction was related or separate in commuting a defendant's Criminal History. The Commission attempted to rectify this area of confusion and U.S.S.G. 4A1.2 and a review of the Amended provision and the reason for the Amendment clearly establishes that the arrests of May 2, 1992 and September 18, 1992 clearly have a related factual basis and should be treated as s single sentence.

CONCLUSION

THE GOVERNMENT'S CONDUCT IN POSSESSING EVIDENCE THAT THE WEAPON ATTRIUBUTED TO LUCKY WAS STOLEN AND FAILING TO SUBMIT

9

THIS TO A PETIT JURY VIOLATES LUCKY'S FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.  LUCKY'S CONVICTIONS MERIT BUT THREE CRIMINAL HISTORY POINTS.

Dated: December 7, 2007
      New York, New York         Respectfully submitted:

                                        /s/:  Harry C. Batchelder, Jr.
                                        _____
                                        **HARRY C. BATCHELDER, JR.**
                                        Counsel for Damon Lucky
                                        Sixty-First Floor
                                        40 Wall Street
                                        New York, New York 10005-1338
                                        212-530-4480

**Certification**

       I certify that a copy of this memorandum of law was served electronically through the Eastern District of New York ECF system on December 9, 2007 to the following:

To:     Clerk of the Court
         United States District Court
         Eastern District of New York
         225 Cadman Plaza East
         Brooklyn, NY 11201

         Office of United States Attorney
         Eastern District of New York
         147 Pierrepont Street
         Brooklyn, NY 11201

         (via Fax)
         Office of the United States Probation
         Eastern District of New York

                                        /s/:  Harry C. Batchelder Jr.
                                        _____
                                        **HARRY C. BATCHELDER, JR.**